IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 23, 2002 Session

## STATE OF TENNESSEE v. JACK ROGER NORTON

**Direct Appeal from the Criminal Court for Washington County**
**No. 26213      Roger E. Cupp, Judge**

---

**No. E2001-01903-CCA-R3-CD Filed July 18,2002**

---

Jerry L. Smith, J., concurring in results.

Although based on the narrow issue presented in this appeal, I agree fully with the decision reached by the Court in this appeal, I am compelled to write separately in order to express my astonishment and dismay over the manner in which the Washington County SWAT team treated the innocent patrons of the tavern searched in this case. While the actions of the SWAT team do not mandate the suppression of evidence seized from the defendant, those actions as they relate to the bar patrons do merit the condemnation of anyone who believes that this country is not, at least for the moment, a police state.

Let us be clear about the type of situation involved in the instant case. This was not a hostage situation fraught with peril for both officers and the hostages. Neither was this operation a raid on a drug lab or other criminal enterprise where officers have reason to believe that everyone on the premises to be searched is potentially dangerous or connected to the criminal activity under investigation. This was a raid on an apparently legal tavern during business hours while the establishment was open and serving a number of patrons whose only transgression appears to have been their choice of bars. Officer Sexton testified that although his department had information that the defendant was engaged in illegal activity at the bar and was possibly armed, the department had no such similar information regarding any of the patrons. Nevertheless, without any reasonable, articulable suspicion that any of the customers were armed or dangerous or posed any threat to law enforcement officers, the members of the SWAT team restrained and handcuffed the customers at gun point. If the slightest bit of protest or resistance was offered by the customers, that individual was, according to Sexton "placed" on the ground through physical force. The customers were then searched and their detention continued until the search of the premises was concluded.

As I indicated earlier, I am astonished and dismayed over this scenario. I am astonished because for twenty-two years it has been the clearly established constitutional law of this country that the patrons of a business about to be searched may not be subjected to this type of treatment absent some reasonable and articulable suspicion that those patrons are armed or dangerous. See, Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). And yet the SWAT team in this case

acted in absolute contravention of this constitutional principle. I am dismayed because Officer Sexton, the apparent spokesperson for the SWAT team at the suppression hearing, was not only unremorseful for this sorry business, but indicated that he and his team would do the same thing again.

Imagine for a moment a scenario where police receive information that the director of a nursing home, the rector of a church, or the manager of a family restaurant is engaged in illegal activity at any one of these establishments and may be armed. Information is also received that evidence of this illegal activity may be found in the establishment. During hours of operation where any one of the establishments mentioned above is full of patients and visitors, parishioners, or customers respectively, the police decide to conduct a search of the establishment. Under the principles of operation for the SWAT team described by Officer Sexton the elderly nursing home patient, the worshiper and the restaurant diner would all be presumed armed and dangerous, and each would be handcuffed, searched and treated the same as the bar patrons in the instant case. I for one find this possibility profoundly disturbing.

Finally, I should say that as a member of both the private bar and as a government attorney, I have represented law enforcement officers on may occasions. There is no question that these officers have a difficult and dangerous profession. Too often inadequate compensation and little appreciation accompany the public's demand for better policing of our neighborhoods and streets. The officers I have represented are by and large dedicated and responsible individuals who realize their duties must be carried out within the constitutional parameters established by a free society if that society is to remain free. Somehow this familiar basic tenet of American civic life has become lost on the authorities conducting the search in this case. One can only hope they become reacquainted with it.

_____
JERRY L. SMITH, JUDGE